# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

|  |  |
|---|---|
| STUART GROTE,<br><br>      Plaintiff,<br><br>vs.<br><br>GARRET KOHL HUSMANN, et al.,<br><br>      Defendants. | No. 24-CV-2027-KEM<br><br>**MEMORANDUM, OPINION AND ORDER** |

Plaintiff Stuart Grote's complaint asserts claims under 42 U.S.C. § 1983 for violation of his First, Fourth, Fifth, and Fourteenth Amendment rights, as well as common law claims of false arrest, malicious prosecution, and extortion.[1] Doc. 1. The claims arise from incidents with La Porte City police officers. After the first incident, Officer Garret Husmann charged Grote with assault of a peace officer. During a second incident, Officer Nicholas Hall arrested Grote for disorderly conduct. Defendants now move for summary judgment, arguing that Grote cannot establish the elements of the claims and asserting Defendants are entitled to qualified immunity. Doc. 24. Grote resists summary judgment (Doc. 28), and Defendants filed a reply (Doc. 30). I find that oral argument is not necessary under Local Rule 7(c).

I **grant in part and deny in part** Defendant's motion for summary judgment. I grant the motion on Counts 1, 2, 3, part of 4, and 5. I deny the motion on the First Amendment claim in Count 4, the Iowa malicious prosecution claim in Count 6, and the request for punitive damages.

---

[1] Grote has since dismissed Counts 7 and 8 that stem from a third incident with Chief Christopher Brecher. Doc. 32. I therefore do not address those claims in this order.

# I.     BACKGROUND[2]

## A. Carquest Parking Lot Assault of a Peace Officer (Counts 1-3)

The first incident occurred in a Carquest parking lot and resulted in Grote's arrest for assault of a peace officer.[3] On June 21, 2022, Grote parked his vehicle behind Officer Husmann's vehicle, and Husmann approached Grote's vehicle while asking "Can I help you, Stuart?" Grote, sitting in his vehicle with his left arm resting along his open window, began questioning Husmann about a prior event involving fireworks. Def. SOF ¶ 2; Def. App. 117. Husmann responded that he would not discuss an active investigation. Grote accused Husmann of bribing someone, and Husmann told Grote, "Have a good night, sir. I'm leaving," and turned to walk back toward his own vehicle. Grote called out to Husmann, "No, wait," and directed Husmann to answer him. Husmann turned back and approached Grote's vehicle, pointing his finger as he said, "I'm going to go do my job, and if you get in the way of me leaving--." Talking over him, Grote said, "Don't point your finger at me." At this point (beginning with Grote telling Husmann to answer him), the exchange involved raised voices and angry tones.

As Husmann told Grote he was leaving, Grote quickly took off his seatbelt and raised his torso up and out of the open window. His left hand was in a fist resting on the windowsill, and he appeared angry. As Grote made a movement with his left arm, Husmann turned slightly, shifting the camera angle, so the video does not capture the entire movement; but the video does show that Grote quickly raised his left arm and then returned it to the car door. Husmann stopped midsentence and said, "Hey. Raise your

---

[2] Unless otherwise noted, the facts in this section are taken from Defendants' Statement of Facts (Def. SOF) admitted by Plaintiff in his response thereto (Pl. Resp. SOF) (Docs. 24-1, 28-1), as well as from any facts admitted by Defendants in their response to Plaintiff's factual allegations from his brief (Def. Resp. SOF) (Doc. 29), the appendices, and video of the incidents (submitted by Defendants). Plaintiff did not file a Statement of Additional Facts, but Defendants responded to those facts included in the Introduction and Factual Background sections of Plaintiff's brief.

[3] The facts related to this incident are largely captured by the body camera video.

2

fist and see what happens. I'm going to drag you out of the car and take you to jail."
Both Grote and Husmann yelled at each other, with Grote yelling "You don't point your
finger at me. You talk to me," and Husmann yelling back, "I am." Both parties lowered
their volume as they continued to discuss the prior event's investigation. In response to
Grote's further questions about the fireworks investigation, Husmann responded, "You'll
find out in court. Have a good night, Stuart," and returned to his vehicle. Def. App.
117; Def. Resp. SOF ¶ 18. There was no physical contact between Grote and Husmann.
Def. Resp. SOF ¶ 23.

Grote stated in his deposition that he "was upset that [Husmann] was pointing his
fingers at [him]," Husmann "escalated the situation when fingers were pointed at me,"
Grote "alert[ed] up," took off his seat belt, and Grote "put [his] arm on the window to
raise [his] chest up out of the window," and his "[t]orso up" was outside the window.
Def. SOF ¶ 9-11; Def. App. 30-35. Grote stated that Husmann was elevated, and Grote
"went to his level." Def. SOF ¶ 11. When Grote was asked, "Did you ever stick your
body outside the window?" he responded, "Half of it." Def. App. 34. Grote stated that
he "raise[d] [his] chest up out of the window" to "speak with [Husmann] better" and
"[s]o an officer is not speaking down on [me]." Def. App. 34. Grote stated that his
hand was in a fist while his torso was sticking outside the window. Def. App. 36. Grote
testified that he lifted his hand off the windowsill as he "waved off [Husmann's] finger
or would almost point back to him." Def. App. 35, 37. He further stated:

A. [Husmann] was pointing his finger at me, and I waved off his finger
and pointed back at him.
Q. Tell me how you waved it off.
A. Swipe.
Q. What do you mean by swipe?
A. A motion in the wind, in the air.
Q. So at this time Officer Husmann is in front of your car window;
correct?
A. Correct.
Q. And is he pointing at you at the time?
A. Yes.

3

Q. All right. And at that point in time you still had your torso out the window; correct?

A. Correct.

Q. And your left arm leaves the window sill; correct?

A. Yes.

Q. And describe to me how you waved it away.

A. A motion, movement in the air.

* * *

Q. Okay. Do you recall, did you move your arm back at all like in a cocked position (indicating)?

A. No.

* * *

Q. Okay, And so I'm trying to get an idea. You're 2 feet away from him; correct?

A. Correct.

Q. And you're making this waving motion with your left arm; correct?

A. Correct.

* * *

Q. So how close is your hand to your body?

A. 8, 10 inches.

* * *

Q. Describe your hand for me during the waving action.

A. Pointing.

Q. Okay. So your hand's not open; correct?

A. No.

Q. Is it in a fist?

A. Pointing.

* * *

Q. So just one finger up and the rest of your hand is in a fist?

A. Correct.

Def. App. 39-43.

Husmann testified in his deposition that Grote "unbuckled his seat belt and put himself about to his waist out of his vehicle and raised his fist at me" when the two men were "[w]ithin touching distance" and that Husmann took a step back, or "flinched back." Def. App. 90, 92-93. He testified that Grote physically threatened him "[b]y lunging out of a vehicle and raising a fist to me." Def. App. 90-91.

4

Husmann did not arrest Grote at the time of the incident. Def. Resp. SOF ¶ 25. Rather, he first consulted with First Assistant Black Hawk County Attorney Heather Jackson Briggs about whether there was probable cause to arrest Grote for assault. Def. SOF ¶ 19; Def. Resp. SOF ¶ 27. Briggs did not review video of the incident at the time of her conversation with Husmann. She stated in her deposition that Husmann told her that Grote was "agitated" and "began swinging his fist out the . . . car at him in an aggressive manner." Def. App. 98. Briggs advised Husmann that she thought probable cause existed for an assault. Def. SOF ¶ 21; Def. App. 101. She later reviewed the body camera video footage, and she stated in her deposition that, after reviewing the video, she thought Husmann's description of the event was consistent with the video and "there was still [probable cause] for an assault arrest there on a person in certain occupations." Def. SOF ¶ 22; Def. App. 102.

Chief Brecher also testified in his deposition that he watched the video, and that he told Husmann, prior to him filing charges, that he "felt it met the burden" and "felt the case facts were there, but without physical contact, I thought it would be hard to persuade a jury of guilt. Like I potentially saw a jury just not seeing it." Pl. App. 26, 27.

On June 23, 2022, Grote was arrested for assault on persons in certain occupations in violation of Iowa Code § 708.3A(4). Def. SOF ¶ 23; Def. App. 113. Husmann's affidavit in support of the criminal complaint described the incident as follows:

> On 06/21/2022 at approximately 21:06, I, your affiant had been doing business checks at Carquest in La Porte City . . . While checking this business the defendant blocked my squad car in and began to demand I speak with him in regards to another investigation. I advised him I will not disclose information in regards to said investigation. I went to leave and the defendant began to yell at me. I turned around and pointed at him and told him that he needs to move so I can continue to do my job. The defendant became very angry that I had pointed at him and took his seat belt off and climbed halfway out of his window. The defendant then raised his left arm with a closed fist as if to punch at me. I was within striking

range at the time that the defendant made the threatening motion as if he was going to punch me.

Def. App. 114. On October 5, 2022, a jury acquitted Grote of the assault charge. Def. Resp. SOF ¶ 31; Pl. App. 1.

### B. Casey's Gas Station Disorderly Conduct (Counts 4-6)

The second incident stems from an encounter between Hall and Grote at a Casey's gas station on November 16, 2023, which culminated in Grote's arrest for disorderly conduct. Grote exited the Casey's as Officer Hall entered. Def. SOF ¶¶ 24-25; Def. Resp. SOF ¶ 32. Grote testified during his deposition that he told Hall, "Get out of my way you stupid fucking pig" in a "normal voice" that was not elevated. Def. SOF ¶ 26; Def. App. 48-49. Hall, in turn, testified at his deposition that Grote said, "Get the fuck out of my way, you stupid, fucking pig" and that Grote "yelled" it. Def. App. 106. When asked whether Grote "said" it or "yelled" it, Hall replied that "[y]ou can say something and also yell it." *Id.* Hall testified that "a reasonable person in that circumstance would believe that [Grote's] language in the moment was loud." Def. App. 107. Hall testified that he believed Grote's "yelling and language was loud." *Id.* Hall also testified that he "looked at the occupants inside the store, and [he] asked them if [Grote's] language and yelling had bothered them . . . . to gauge whether they were in distress." Def. App. 106. Hall testified that "[o]ne of the occupants inside the store [B.G.] told me that, yes, the language and yelling did bother him, so I then proceeded to go outside and have a discussion with [Grote]." Def. App. 107. Hall stated that he believed he used the word yelling inside the store when talking to the occupants. Def. App. 108. None of these interactions are part of the video footage from Hall's body camera.

The video begins after Hall walked outside the store, with Hall instructing Grote to step out of his vehicle. Def. App. 118. Grote complied and said, "You asked them?" and Hall indicated he did. Hall told Grote, "You said the F-word" and "told me to go F

6

myself. That's disorderly conduct." Grote responded, "Give me disorderly conduct then," and Hall said, "That's what's going to happen." Hall said, "I need you to turn around and put your hands behind your back for me." Grote, incredulous, shook his head and said, "You can't give me—" but he cut himself off when Hall turned away from him (perhaps in response to the radio). When Hall turned back to Grote seconds later, Grote had returned to his vehicle, and Grote quickly shut the door. Hall opened the car door, and Grote slammed it shut again. Hall instructed Grote to "step out of the vehicle right now," pulling on the locked door handle.

The video then shows that Hall approached B.G. and requested and wrote down his contact information. Hall asked B.G. to confirm that Grote's "language did bother [him] when [Grote] said the F-word in there," and B.G. responded affirmatively. Hall testified that he "knew that my body cam wouldn't have captured our first interaction inside the Casey's, so I walked away from [Grote] to speak with [B.G.]. That way it would be documented." Def. App. 107. The interaction with B.G. lasted about forty seconds.

Hall returned to Grote's vehicle, and Grote immediately exited. All told, Grote was inside his vehicle for under a minute. Grote said, "Do what you gotta do." Hall told Grote, "You can't be talking like that," and Grote responded, "I can too." Hall reiterated that it was disorderly conduct and said that he had warned Grote "the last time [he] did this" at Dollar General. Grote complied with Hall's directions to place his phone on the hood of his vehicle and his hands behind his back. Hall arrested Grote for disorderly conduct in violation of Iowa Code § 723.4(1)(b). Def. SOF ¶ 36; Def. App. 115. In the criminal complaint, Hall described the crime as follows: "[G]rote told me to go fuck myself and called me a stupid pig while inside of caseys general store. I asked the occupants if his language and yelling bothered them which they said it did." Def. App. 115. The Black Hawk County Attorney moved for dismissal, and on April 12, 2024, the court dismissed the case. Pl. App. 3-5; Def. Resp. SOF ¶ 45.

7

Grote testified that he had no interactions with Hall prior to that day. Def. App. 52. Hall, on the other hand, described prior interactions with Grote where Grote would use obscenities and call him names; Hall stated he "just ignored it most of the time and continued just doing [his] job." Def. App. 105. Hall stated that on two occasions when Grote was cursing at Hall, Hall approached him to discuss why there was hostility, but "[his] attempts to talk with [Grote] and reason with him were unsuccessful." Def. SOF ¶ 38; Def. App. 105. Hall also testified that during prior incidents with similar behavior, occupants of the store approached Hall about Grote's conduct. Def. SOF ¶ 39; Def. App. 108-09.

### C. Procedural History

On May 23, 2024, Grote filed the complaint in this case. Doc. 1. Counts 1 through 3, brought against Husmann and the City, relate to the Carquest parking lot incident and Grote's arrest for assault of a police officer. Counts 4 through 6, against Hall and the City, relate to the Casey's incident and Grote's arrest for disorderly conduct. For both incidents, Grote alleges a violation of his rights under 42 U.S.C. § 1983 for false arrest in violation of the Fourth Amendment, retaliatory arrest in violation of the First Amendment, and a violation of his Due Process rights under the Fifth and Fourteenth Amendments (Counts 1 and 4); false arrest under state law (Counts 2 and 5); and malicious prosecution under state law (Counts 3 and 6). Grote's § 1983 claim and claim for extortion against Brecher and the City (Counts 7 and 8) have been dismissed. Doc. 32.

### II.    DISCUSSION

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant [a motion for] summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To establish a

8

genuine dispute of material fact or lack thereof, the parties must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," or else "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[4]

For the plaintiff to avoid summary judgment, sufficient evidence must exist "on which the jury could reasonably find for the plaintiff."[5] The court "view[s] the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor."[6] "But if there is a video of the event in question that clearly contradicts the nonmovant's version of events, [the court] view[s] the facts 'in the light depicted by the videotape.'"[7]

### A. Carquest Parking Lot Incident with Husmann

#### 1. Fourth Amendment, First Amendment, False Arrest, and Malicious Prosecution Claims

Grote brings claims under § 1983 and Iowa common law against Husmann based on the Carquest parking lot incident resulting in Grote's arrest for assault of a peace officer. Most of Grote's claims require proof that Husmann lacked probable cause—

---

[4] **Fed. R. Civ. P. 56(c)(1)**.

[5] *Olmsted v. Saint Paul Pub. Sch.*, 830 F.3d 824, 828 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

[6] *Soo Line R.R. Co. v. Werner Enters.*, 825 F.3d 413, 418 (8th Cir. 2016) (quoting *Bishop v. Glazier*, 723 F.3d 957, 960-61 (8th Cir. 2013)).

[7] *Leask v. City of Minneapolis*, No. 25-1361, 2026 WL 934919, at *1 (8th Cir. Apr. 7, 2026) (to be published in the Federal Reporter, Fourth Series) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).

arrest without probable cause in violation of the Fourth Amendment,[8] retaliatory arrest in violation of the First Amendment,[9] false arrest under Iowa law,[10] and malicious prosecution under Iowa law.[11]

To determine whether probable cause exists, courts examine "the events leading up to the arrest" and "the totality of circumstances" available to the officers at the time of the arrest "viewed from the standpoint of an objectively reasonable police officer."[12] "Probable cause is a question of law that is determined at the moment the arrest is made, and 'any later developed facts are irrelevant to the probable cause analysis.'"[13] "Probable cause 'is an objective standard requiring that [the court] afford officers substantial latitude in interpreting and drawing inferences from factual circumstances.'"[14] "The question is

---

[8] *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001) ("[A] false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest.").

[9] *Gonzalez v. Trevino*, 602 U.S. 653, 655 (2024) (per curiam) (recognizing that First Amendment retaliatory arrest claims generally require a plaintiff "'prove the absence of probable cause for the arrest,'" but there is a "narrow exception" when the plaintiff "'produces objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been'" (quoting *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019))).  Grote does not argue this exception applies.

[10] *Children v. Burton*, 331 N.W.2d 673, 679 (Iowa 1983) (holding that an "essential element[]" of the tort of false arrest" is "unlawfulness of the detention or restraint" and that an arrest is not unlawful when supported by probable cause).  A false arrest claim under Iowa law requires "a probable cause standard less demanding than the constitutional probable cause standard in criminal cases[; i]f the officer acts in good faith and with reasonable belief that a crime has been committed and the person arrested committed it, his actions are justified and liability does not attach." *Children*, 331 N.W.2d at 680.

[11] *Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022) ("Under Iowa law, a plaintiff alleging malicious prosecution must show . . . want of probable cause . . . ." (quoting *Sarvold v. Dodson*, 237 N.W.2d 447, 448 (Iowa 1976))).

[12] *Galanakis v. City of Newton*, 134 F.4th 998, 1003 (8th Cir. 2025).

[13] *Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017) (quoting *Gilmore v. City of Minneapolis*, 837 F.3d 827, 833 (8th Cir. 2016)).

[14] *Watson v. Boyd*, 119 F.4th 539, 551 (8th Cir. 2024) (quoting *Brown v. City of St. Louis*, 40 F.4th 895, 900 (8th Cir. 2022)), *cert. denied,* 146 S. Ct. 280 (2025).

10

whether the 'facts and circumstances were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'"[15] The subjective intent of the officer is "irrelevant to the existence of probable cause."[16] In addition, "a police officer 'who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved.'"[17]

Under *Franks v. Delaware*,[18] "[i]f a plaintiff alleges an affidavit contains false statements, [the court] ask[s] whether probable cause would still exist based on the undisputed facts."[19] False statements in the affidavit alone are insufficient to establish a violation of the plaintiff's Fourth Amendment rights; the false statements must be material such that "if all the false . . . portions of a[n] . . . affidavit are corrected," probable cause does not exist based on "the corrected affidavit."[20]

---

[15] *Id.* (cleaned up) (quoting *Brown*, 40 F.4th at 900).

[16] *United States v. Demilia*, 771 F.3d 1051, 1054 (8th Cir. 2014) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

[17] *Hannah v. City of Overland*, 795 F.2d 1385, 1389 (8th Cir. 1986) (quoting *Pierson v. Ray*, 386 U.S. 547, 555 (1967)), *abrogated on other grounds by Green v. Bock Laundry Mach. Co.*, 490 U.S. 504 (1989). Iowa courts employ a similar standard of probable cause as federal courts, *see, e.g.*, *Veatch v. City of Waverly*, 858 N.W.2d 1, 8 (Iowa 2015), and the parties largely make the same arguments in support of the Iowa claims as in support of the § 1983 claims.

[18] 438 U.S. 154 (1978).

[19] *Allen v. Monico*, 27 F.4th 1372, 1376 (8th Cir. 2022) (citing *Stockley v. Joyce*, 963 F.3d 809, 820-21 (8th Cir. 2020), which "examin[ed] an affidavit for probable cause and ask[ed] whether 'probable cause would have been found if the misrepresentation had been corrected and the omissions had been included'"). It is unclear whether a *Franks* violation can serve as the basis for a false arrest claim under Iowa law, as the Iowa Supreme Court has held a "facially valid" warrant "protect[s] the arresting officer . . . from any liability" for false arrest. *Thomas v. Marion Cnty.*, 652 N.W.2d 183, 186-87 (Iowa 2002). As any *Franks* claim of Grote's fails, I need not address the issue.

[20] *Allen*, 27 F.4th at 1376 (quoting *Small v. McCrystal*, 708 F.3d 997, 1007-08 (8th Cir. 2013), *abrogated on other grounds as recognized by Laney v. City of St. Louis*, 56 F.4th 1153, 1157 n.2 (8th Cir. 2023)).

11

Husmann obtained a warrant to arrest Grote for assault of a peace officer in violation of Iowa Code § 708.3A(4). At the time of the offense, Iowa law defined assault to include:

> a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.[21]

Grote asserts that probable cause for the assault arrest depends on whether Husmann's statement in the affidavit supporting the criminal complaint—that Grote climbed halfway out of the vehicle and raised his left arm with a closed fist as if to punch Husmann—is true. Grote's resistance focuses on his alleged physical position and movement during the incident, not his intent, deeming it important that he never fully left his vehicle. Grote argues that Husmann's sworn statement contained false information and therefore probable cause did not exist. He argues the video shows that "Grote never raised his fist" and that "Grote stuck his head out of the car window but did not climb halfway out of the car as sworn to by Husmann." Doc. 28-2 at 8. Grote argues that he "testified that the only time his hand made a fist was when his arm was down on the window opening" and that his "left arm is necessarily down on the driver's side window opening to support him." *Id.*

Grote admitted in his deposition that:

- he alerted up and took off his seat belt;
- he had his torso outside the window, and he stuck half of his body outside the window;[22]
- his left arm left the windowsill;
- he waved off Husmann's finger with a swipe—a motion in the air;

---

[21] **Iowa Code § 708.1(2)**.

[22] The video also depicts that Grote had more of his body than just his head out the window, consistent with Husmann's affidavit.

12

- he had one finger up and the rest of his hand in a fist during the swipe action; and
- he was 2 feet away from Husmann, but Grote's hands were 8 or 10 inches away from his own body.

Given his admissions during his deposition, the only matters of dispute are Grote's exact hand formation (whether his hand was pointing or in a fist) and how he moved his hand (a swipe or a swing as if to punch). According to Grote, a genuine issue of material fact exists as to whether he raised his fist as if to punch Husmann, which constitutes the probable cause for arrest. He contends that probable cause requires a credibility finding between Husmann and Grote.

The video shows Grote moving quickly and aggressively to remove his seatbelt, lean out of his car, and move his arm quickly up into the air toward Husmann before bringing it back down again. Grote's hand is clearly in a full fist both before the camera moves and once fully back in frame. The video does not depict Grote's hand in motion because Husmann steps or flinches back in response to Grote's movement.[23] Even if Grote briefly moved his finger into a pointing position while off camera, or "swiped" at Husmann rather than "swinging" at him, that Husmann flinched back demonstrates he feared immediate physical contact. Grote's quick aggressive actions leading up to the off-camera moment, coupled with Husmann's response thereto, support that Grote's motion was threatening.

Husmann stopped himself mid-sentence after Grote moved his arm and said, "Raise your fist and see what happens," threatening to take him to jail. Grote argues that because Husmann suggested he would be arrested if he raised his fist (and he was not arrested on the scene), this shows that he did not raise his fist. I disagree and find that if anything, Husmann's statement supports he perceived Grote's movement as threatening him with a raised fist.

---

[23] Husmann testified that he stepped or flinched back, which is consistent with the brief movement on the body camera video, and Grote offers no evidence contradicting this testimony.

13

Considering the facts in the light most favorable to Grote (as depicted by the body camera video), probable cause existed to arrest Grote for assault of a peace officer based on his aggressive behavior as he unbuckled his seatbelt, quickly moved his body out the window, and swiped his arm in the air, pointing at Husmann in a threatening motion that caused Husmann to flinch back. Even if Husmann falsely stated in the affidavit that Grote used a "closed first," probable cause for assault still exists based on a corrected affidavit (changing "closed fist" to "pointer finger out" to read "then raised his left arm with a [pointer finger out] as if to punch me.")

As such, Grote's § 1983 claims, based on the Fourth and First Amendments, and Iowa state law claims, for false arrest and malicious prosecution, must be dismissed as a matter of law, as Grote cannot prove that Husmann lacked probable cause.

### 2. Qualified Immunity

Defendants argue that Husmann is entitled to qualified immunity on the § 1983 claims under the Fourth and First Amendments because he had arguable probable cause to arrest Grote. "State officials are entitled to qualified immunity" against § 1983 claims unless (1) "the facts, viewed in the light most favorable to the plaintiff, demonstrate a constitutional or statutory deprivation; and (2) . . . the right was clearly established at the time."[24] Courts may decide either step first.[25] "Arguable probable cause" is shorthand for "whether the officer should have known that the arrest violated plaintiff's clearly established right."[26] Arguable probable cause exists when an officer "reasonably but mistakenly concluded that probable cause was present."[27] Arguable probable cause provides law enforcement officers in a qualified immunity analysis "an even wider berth

---

[24] *Webster v. Westlake*, 41 F.4th 1004, 1009-10 (8th Cir. 2022).

[25] *Id.* at 1010.

[26] *Brown*, 40 F.4th at 901.

[27] *Id.* (cleaned up) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 65 (2018)).

14

for mistaken judgments" than the probable cause standard "'by protecting all but the plainly incompetent or those who knowingly violate the law.'"[28]

Here, even if Husmann was mistaken that there was probable cause for assault, that mistake was objectively reasonable. Husmann did not arrest Grote at the scene, but rather, considered the situation and consulted with County Attorney Briggs and Chief Brecher. Husmann described the incident to Briggs and showed the body camera video to Brecher, and both Briggs and Brecher agreed there was probable cause. That a county attorney and the police chief both agreed with Husmann's probable cause assessment supports the reasonableness of that conclusion. No Iowa cases show that assault cannot be based on a threatening gesture when the assailant's hand is pointing rather than in a fist. A reasonable officer could mistakenly conclude probable cause existed. Because Grote cannot establish either a constitutional violation or that a right was clearly established, Husmann is entitled to qualified immunity.

Defendants also argue that they are entitled to qualified immunity on their state-law claims under Iowa Code § 670.4A, which provides that an officer is not liable for money damages if "the right, privilege, or immunity secured by law was not clearly established at the time of the alleged deprivation, or at the time of the alleged deprivation the state of the law was not sufficiently clear that every reasonable employee would have understood that the conduct alleged constituted a violation of law."[29] In addition, it provides that "[a] municipality shall not be liable for any claim brought under this chapter where the employee or officer was determined to be protected by qualified immunity."[30] The Iowa legislature enacted this statute in 2021 in reaction to the Iowa Supreme Court holding "for the first time [in 2017] that state officials could be sued directly under the

---

[28] *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

[29] **Iowa Code § 670.4A(1)(a)**.

[30] **Iowa Code Ann. § 670.4A(2)**.

15

Bill of Rights of the Iowa Constitution for money damages."[31]  Thus, the Iowa Supreme Court recently held that the qualified immunity statute "applies only where the plaintiff has asserted a state constitutional tort claim or statutory claim and not where the plaintiff has asserted only a state common law claim."[32]  Courts have not yet had the chance to apply this ruling to common law claims of false arrest and malicious prosecution,[33] but the Iowa Supreme Court's opinion in *Doe* is clear.  Because Grote's state law claims for false arrest and malicious prosecution arise under the common law, the state qualified immunity statute does not apply.

Qualified immunity applies to Husmann on the § 1983 claims under the Fourth and First Amendments, but does not apply to the state law claims against Defendants.

### 3. *Due Process Claim*

As part of his § 1983 claim, Grote conclusory alleges a due process violation.  The complaint asserts that Husmann "recklessly and knowingly manufactured evidence against Grote" and "recklessly and knowingly omitted exculpatory evidence from his investigation and official reports."  Doc. 1 at 8.  Grote further alleges that "Husmann falsely swore out a criminal complaint against Grote for assault on a police officer without probable cause and using fabricated sworn information asserting that there was probable

---

[31] ***Doe v. W. Dubuque Cmty. Sch. Dist.***, 20 N.W.3d 798, 803 (Iowa 2025).

[32] ***Id.*** at 806.

[33] *Cf.* ***id.*** (holding that qualified immunity statute did not apply to claims against a school for negligence and breach of fiduciary duty arising out of a student's assault of another student; additionally reasoning that the statute could not conceptually be applied to common law claims such as negligence alleging "personal injury . . . arising out of a vehicle crash," as negligence involves "duty and breach," not "right, privilege, or immunity"); ***Mormann v. City of Manchester***, 27 N.W.3d 820, 830 (Iowa 2025), *as amended* (Jan. 20, 2026) (noting that state "qualified immunity do[es] not apply to common law tort claims—for example, assault and battery").

16

cause." *Id.* at 8-9.  Defendants argue that Grote failed to present any facts to support this claim and that Husmann is entitled to qualified immunity.

Grote does not offer any specific resistance to dismissal of this claim in his brief. As noted above, Grote generally argues that Husmann falsely stated in the arrest affidavit that Grote "raised his left arm with a closed fist as if to punch at me" and "made the threatening motion as if he was going to punch me" (rather than saying that Grote's finger was pointed).  "Any deprivation of [plaintiff's] liberty before his criminal trial . . . is governed by the Fourth Amendment and its prohibition on unreasonable seizures."[34] Thus, the Eighth Circuit has held that a plaintiff's substantive due process claim based on a false police report fails when the plaintiff was acquitted at trial and "suffered no deprivation of liberty after the trial."[35]  Here, even if Husmann included false statements in the complaint affidavit, because Grote was acquitted, his due process claim fails, and Defendants are entitled to summary judgment.

### B. Casey's Incident with Hall

Grote asserts parallel claims against Hall based on his arrest for disorderly conduct, including false arrest under the Fourth Amendment and Iowa law, retaliatory arrest under the First Amendment, malicious prosecution under Iowa law, and a due process violation.  As noted earlier, most of these claims require proof that the officer lacked probable cause to arrest.

---

[34] *Johnson v. McCarver*, 942 F.3d 405, 410-11 (8th Cir. 2019) (noting the Supreme Court had recently overruled prior Eighth Circuit precedent on this issue in *Manuel v. City of Joliet*, 580 U.S. 357 (2017)).

[35] *Id.* at 411.

### 1. Fourth Amendment False Arrest Claim

Hall arrested Grote for disorderly conduct in violation of Iowa Code § 723.4(1), which provides that a person commits a simple misdemeanor when he "[m]akes loud and raucous noise in the vicinity of any residence or public building which intentionally or recklessly causes unreasonable distress to the occupants thereof." The parties agree that Grote told Hall to get out of his way "you stupid fucking pig." Defendants assert that Grote yelled his insult to Hall, constituting a loud and raucous noise in a public building, and that his doing so bothered at least one customer, causing unreasonable distress. Defendants thus contend that Hall had probable cause to arrest Grote for disorderly conduct. Grote responds that he did not yell and that he was really arrested for the content of his speech.

Viewing the facts in the light most favorable to Grote, a reasonable juror could find that Grote did not shout or yell and that Hall instead found his use of obscenities objectionable. First, Hall and Grote provided contradictory testimony as to whether Grote spoke in a "loud" or "normal" volume when he made the pig statement to Hall. In addition, Hall's statements captured on the body camera video suggest that he was more concerned with Grote's language than his volume: Hall described the offense conduct as "sa[ying] the F-word" and "t[elling] me to go F myself"; Hall told Grote that he "can't be talking like that"; and Hall asked the witness whether Grote's "language" bothered him "when he said the F-word in there." Nowhere on the body camera video does Hall state that Grote shouted, yelled, or spoke in a loud volume. Although Hall explained in his deposition that a person can both "say" and "yell" something, and he testified (and his complaint states) that he asked the occupants of the store whether Grote's "language *and* yelling" bothered them[36] prior to the beginning of the body camera video,

---

[36] Grote also challenges whether being bothered equates to being caused "unreasonable distress," but I need not address that argument since I find no probable cause Grote committed disorderly conduct.

18

a juror could discredit this testimony, especially because Hall's interaction with witness B.G. captured on camera was meant to document his prior statement, and it did not mention Grote's volume. In addition, an affidavit from witness B.G. states that Grote "said something like 'you fucking pig'" and that B.G. "was offended by the content of what [Grote] said, not by how he said it." Pl. App. 6. A genuine dispute of material fact exists as to whether Grote yelled or shouted and thus whether there was probable cause that he made a "loud and raucous noise" for purposes of the disorderly conduct statute.[37]

---

[37] I need not address whether arguable probable cause existed to arrest Grote for disorderly conduct if he did indeed yell, albeit briefly. Grote relies on a case involving a similar Arkansas statute, in which the Eighth Circuit held that arguable probable cause did not exist to arrest plaintiff for making an "unreasonable or excessive noise" when he shouted "'f**k you!' out of his car window" to a police officer. *Thurairajah v. City of Fort Smith (Thurairajah I)*, 925 F.3d 979, 982 (8th Cir. 2019). The court reasoned that Arkansas courts had only found disorderly conduct based on "extended loud shouting and disruptive behavior or amplified sound," and one court had specifically rejected "that 20 seconds of public shouting involving foul language" could constitute the offense. *Id.* at 983-84. There is not as much caselaw on the Iowa disorderly conduct statute. *Compare Kelly v. Bender*, 23 F.3d 1328, 1329-30 (8th Cir. 1994) (holding that when plaintiff yelled to police officers from apartment balcony, "Are you here to arrest the asshole that's doing the shooting?," officers could arrest plaintiff for disorderly conduct under Iowa law based on "yelling obscenities" that could be heard from "100 yards away"), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304 (1995), *with Small*, 708 F.3d at 1004 (holding that "a reasonable officer would not have believed he had probable cause to arrest [plaintiff] for disorderly conduct" under Iowa law when "some witnesses heard him shout an obscenity in general derogation of the County law enforcement, [but] others heard nothing"), *and Leventhal v. Schaffer*, 612 F. Supp. 2d 1026, 1044, 1046 (N.D. Iowa 2009) (holding that law enforcement lacked arguable probable cause to arrest for disorderly conduct when plaintiff "raised his voice and told [police officer] not to call him a liar" while pointing finger at officer) , *aff'd,* 365 F. App'x 37 (8th Cir. 2010). Much of the caselaw that does exist is from a prior version of the statute that lacked a mens rea element and was held unconstitutionally vague on its face in September 2019. *See Miano v. Miller*, No. 18-CV-110, Doc. 35 (S.D. Iowa Sept. 26, 2019) (holding unconstitutionally vague on its face section that prohibited making "loud and raucous noise in the vicinity of any residence or public building which causes unreasonable distress to the occupants thereof," because loud and raucous speech is protected by the First Amendment, and the statute criminalized conduct based on the unpredictable reaction of third parties with no intent required as to that reaction).

19

Defendants argue that Hall is entitled to qualified immunity because it was not clearly established that Grote's conduct did not constitute disorderly conduct. Defendants cite Iowa cases involving people who yelled, shouted, or otherwise spoke in a loud volume.[38] These cases would be helpful if the predicate fact of whether Grote yelled, or made a loud, raucous noise, were established. But the court must view the contested fact in Grote's favor and assume that he spoke in a normal speaking volume. Hall could not "reasonably but mistakenly conclude[] that probable cause" existed[39] for Grote making a "loud and raucous noise" if Grote made one comment at a normal speaking volume.

Defendants argue that Grote's resisting arrest provides an alternative ground to arrest him. Hall did not say that he was arresting Grote for resisting arrest, nor did he charge Grote with that crime. But determining whether probable cause exists to arrest is generally an objective inquiry.[40] Thus, the Supreme Court has held that the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."[41] And the Eighth Circuit has recognized that "qualified immunity may apply if there was probable cause or arguable probable cause to arrest [plaintiff] for *any* crime at the time of the arrest."[42]

Grote argues that Hall seized him as soon as he asked him to turn around and put his hands behind his back, at which point Grote had not resisted arrest. "A person is

---

[38] *Kelly*, 23 F.3d at 1330; *State v. Sinclair*, No. 12-1151, 2013 WL 3458146, at *1 (Iowa Ct. App. July 10, 2013) (noting defendant pleaded guilty to disorderly conduct charge based on yelling outside of a home to be let in); *Peterson v. Prosser*, No. C08-4005, 2010 WL 797130, at *13 (N.D. Iowa Mar. 4, 2010) (holding that defendants were entitled to qualified immunity for disorderly conduct arrest when plaintiff talked loudly to person behind the counter at city hall, expressing anger about his previous arrests, and leaned toward the person such that they became nervous and scared), *report and recommendation adopted,* 2011 WL 4591896 (Sept. 30, 2011).

[39] *Brown*, 40 F.4th at 901.

[40] *Devenpeck*, 543 U.S. at 153.

[41] *Id.*

[42] *Webster v. Westlake*, 41 F.4th 1004, 1012 (8th Cir. 2022).

20

seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement . . . ."[43]  "[A]n officer's application of physical force to the body of a person 'for the purpose of arresting him' [i]s itself an arrest—not an *attempted* arrest—even if the person d[oes] not yield."[44]  But a "show of authority, such as an order for a suspect to halt[,] . . . . does not become an arrest unless and until the arrestee complies with the demand."[45]  In other words, "[a] police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned."[46]

When Hall asked Grote to turn around and place his hands behind his back, Grote instead locked himself in his vehicle.  Because Grote did not comply with Hall's request to handcuff him, Grote was not seized at that time.  Grote did not submit to Hall's show of authority until Hall returned from talking with witness B.G. and Grote exited the vehicle.

Defendants argue that by the time Grote was seized, probable cause existed to arrest him for interference with official acts.  Iowa Code § 719.1 prohibits "knowingly resist[ing] or obstruct[ing] anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer."  The Iowa Supreme Court has suggested "that when the statute refers to 'legal authority' to make arrests, it does not exclude arrests that later turn out to be unlawful

---

[43] *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).

[44] *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (quoting *California v. Hodari D.*, 499 U.S. 621, 624 (1991)).

[45] *Id.*

[46] *Brendlin*, 551 U.S. at 254.

21

under the seizure principles."[47] The court reasoned that *State v. Thomas* might be "controll[ing],"[48] in which it overruled the common law rule that allowed for resisting an unlawful arrest and instead held "a person may not resist an arrest reasonably effected by one whom the arrestee knows or has good reason to know is a peace officer, despite legality or illegality of the arrest."[49] In addition, an Iowa statute explicitly precludes using force to resist arrest, even if the arrest is unlawful.[50]

"[T]he standard for establishing a violation of the interference . . . statute is generally fairly low[;] . . . . 'the key question is whether the officer's actions were hindered.'"[51] The statute explicitly excludes "verbal harassment" as constituting interference, "unless the verbal harassment is accompanied by a present ability and apparent intention to execute a verbal threat physically."[52] Interference does not require

---

[47] *State v. Wilson*, 968 N.W.2d 903, 917-18 (Iowa 2022) (ultimately declining to address as "not preserved" argument that "[b]ecause her arrest was unlawful under the Fourth Amendment . . . , the arrest was not 'within the scope of the lawful duty or authority of [the] officer'" (alteration in original)).

[48] *Id.* at 918.

[49] *State v. Thomas*, 262 N.W.2d 607, 611 (Iowa 1978). The defendants in *Thomas* were convicted under a statute prohibiting "knowingly and willfully resist[ing] an[] . . . officer in the discharge of his duties" (not *lawful* duties), but the court did not rely on this statutory language, instead reasoning that the common law rule promoted violence when other recourse was available (namely, the courts). *Id.* at 609, 611.

[50] *Wilson*, 968 N.W.2d at 918 (citing **Iowa Code § 804.12**). Grote relies on a case applying South Carolina law to argue that "resisting arrest alone does not provide probable cause for the arrest that was resisted." *Newkirk v. Enzor*, 240 F. Supp. 3d 426, 433 (D.S.C. 2017) (citing a South Carolina state case). But South Carolina (unlike Iowa) has never overruled the common law right to resist an unlawful arrest. *See State v. McGowan*, 557 S.E.2d 657, 661 (S.C. 2001) (noting by statute, "a person may not be convicted of resisting arrest with a deadly weapon where the underlying arrest is unlawful"); *State v. Grate*, 423 S.E.2d 119, 120 (S.C. 1992) (acknowledging cases from 1919 and 1939 "which hold that a person has a right to resist an unlawful arrest, even to the extent of taking the life of the aggressor if necessary to maintain liberty").

[51] *Wilson*, 968 N.W.2d at 918 (cleaned up) (quoting *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1107 (8th Cir. 2004)).

[52] **Iowa Code § 719.1(3)**.

using force.[53]  On the other hand, something more than "passive failure to cooperate" is required.[54]  Obstruction "includes putting obstacles in the path of officers completing their duties."[55]

"[T]wisting and jostling" while officers "attempt[] to place handcuffs on" such that it takes "several minutes to make the arrest" constitutes interference.[56]  Refusing to stop for a traffic stop after the officer activates the emergency lights is interference.[57]  When an officer is investigating a complaint that the defendant threatened to shoot someone, and the officer instructs the defendant to stay inside his home until the officer leaves the scene, but the defendant instead exits his home with a loaded firearm in the vicinity of the officer and the person he previously threatened—interference.[58]  Verbally instructing a friend not to comply with an officer's "lawful command" to exit the vehicle during a traffic stop is interference, because it is an obstacle to the officer's duties and hinders the "orderly conclusion of the traffic stop."[59]  Jerking out of the officer's grasp, entering his own vehicle over the officer's instruction not to, and refusing to come out—

---

[53] *Lawyer*, 361 F.3d at 1107.

[54] *Webster*, 41 F.4th at 1011; *see also* *State v. Smithson*, 594 N.W.2d 1, 2 (Iowa 1999) (noting that "resist" and "obstruct" in § 719.1 were chosen to "convey[] the idea of active interference," as opposed to "more passive language such as 'object' or 'fail to cooperate'" (quoting John L. Yeager & Ronald L. Carlson, *Criminal Law & Procedure § 422* (Supp. 1998))).

[55] *Webster*, 41 F.4th at 1010 (quoting *State v. Sullivan,* No. 08-0541, 2009 WL 250287, at *3 (Iowa Ct. App. Feb. 4, 2009)).

[56] *Wilson*, 968 N.W.2d at 918 (further noting that even though handcuffs might have been "uncomfortably placed" originally, defendant "was not cooperative as police tried to deal with the situation").

[57] *State v. Legg,* 633 N.W.2d 763, 772 (Iowa 2001).

[58] *State v. Buchanan*, 549 N.W.2d 291, 292, 294-95 (Iowa 1996) ("[T]he officer's lawful duties were hindered while he neutralized what he perceived to be a volatile situation.").

[59] *Lawyer*, 361 F.3d at 1106-07.

23

all while the officer is trying to write a parking citation—constitutes interference.[60]  And evading service may constitute interference, when the person does more than simply fail to answer the door tens of times, or respond to "door tags" requesting he call the sheriff's office, but also "affirmatively misle[ads]" the sheriff's office by saying on the phone that he would pick up the papers.[61]

"[A] single instance of mere failure to cooperate cannot serve as the basis for a charge of interference with official acts."[62]  The Iowa Supreme Court has held that a bar owner did not commit interference when an officer told her there had been a noise complaint and asked her to turn down the music, and the owner ignored this request.[63] Relying on this precedent, the Eighth Circuit held officers were not entitled to qualified immunity on plaintiff's Fourth Amendment false arrest claim when officers arrested plaintiff for interference after he "continued walking away despite repeated commands to stop," and when he did "finally stop[,]" he hesitated before complying "with a command to 'Get on the ground now'" (during an investigation into a call about a "disturbance with a weapon").[64]

---

[60] *Davis v. City of Albia*, 434 F. Supp. 2d 692, 699, 704 (S.D. Iowa 2006); *see also State v. Carter*, No. 24-1626, 2025 WL 3170913, at *2-3 (Iowa Ct. App. Nov. 13, 2025) (holding that defendant interfered with officer's investigation into whether his car smelled like marijuana by refusing to provide his identification and exit the vehicle at officer's request, as well as "physically resisting the officers when they tried to get him out of the car").

[61] *Sullivan*, 2009 WL 250287, at *1, *4; *see also State v. Holmes*, No. 00-950, 2001 WL 1577584, at *1-2 (Iowa Ct. App. Dec. 12, 2001) (giving a false name to an officer constitutes interference "only if the false information hinders, retards, or delays the officer in the performance of an official act or duty"; therefore, providing a false name when filing a missing property report did not constitute interference).

[62] *Irvin v. Richardson*, 20 F.4th 1199, 1208 (8th Cir. 2021) (quoting *Sullivan*, 2009 WL 250287, at *4).

[63] *Smithson*, 594 N.W.2d at 1, 3.

[64] *Irvin*, 20 F.4th at 1203-04, 1206, 1208.

24

The lawfulness of an officer's command also affects whether a failure to follow that command constitutes interference. The Iowa Supreme Court held a person did not commit interference when, upon seeing police, the person started to quickly walk from his fenced backyard to the house, ignoring the officer's single command to "stop, police"; the court noted the person was in an area protected by the Fourth Amendment from warrantless stops (the curtilage of a house) and therefore was "free to go about [his] business . . . without police interference."[65] Similarly, the Eighth Circuit held officers lacked arguable probable cause to arrest a person for interference based on her refusal to allow them to perform a welfare check on her child, either by entering her house or by bringing the child outside.[66] The court noted the officers could not lawfully check on the child's welfare inside the home without the person's cooperation, a warrant, or an exigency.[67] The court noted the person "did not physically impede the detectives or set up additional obstacles between them and [the child]," but rather, "simply refused to comply with the officer's request to remove the obstacle already in existence—the constitutionally protected barrier of her home—which was nothing more than a failure to cooperate."[68]

There is perhaps a distinction between cases in which a person fails to cooperate with a request to stop, and those in which the person fails to cooperate with being placed under arrest. In *State v. Janes*, the Iowa Court of Appeals held (in an unpublished decision) that probable cause existed to arrest defendant for interference when, in

---

[65] ***State v. Lewis***, 675 N.W.2d 516, 520, 526 (Iowa 2004) (favorably citing cases in which courts held that "if police were not authorized to detain defendant, defendant was free to walk away from the arresting officer and could not be charged with" interference; and that "walking away from police officers, refusing to answer their questions, and ignoring their directions to return cannot constitute obstruction . . . if the officers did not have lawful authority to detain the defendant").

[66] ***Webster***, 41 F.4th at 1008-09, 1011, 1013.

[67] ***Id.*** at 1011.

[68] ***Id.***

25

response to the officer informing him he was under arrest (perhaps unlawfully), he "resisted the arrest by backing away and then keeping his arms down so the officers could not secure them behind his back."[69]  On the other hand, in *Buldhaupt v. City of Des Moines* (another unpublished Iowa Court of Appeals decision), the court held when the officer illegally entered a plaintiff's home without a warrant and said he would arrest plaintiff for refusing to come outside to talk to him, no probable cause for interference existed, even though plaintiff sat down on the couch and gripped it as the officer approached to arrest him (ultimately, a physical altercation ensued).[70]

Here, Hall told Grote he was charging him with disorderly conduct for insulting him and using the F-word, and he asked Grote to turn around and put his hands behind his back.  Grote (correctly) stated that Hall could not arrest him on this basis.  Hall turned away briefly, and Grote got into his vehicle and locked the door.  Hall instructed Grote to step out of the vehicle, and Grote complied about a minute later, after Hall returned from talking with a witness.  I find this a close issue, but ultimately, under the circumstances, I cannot say there was not arguable probable cause to arrest Grote for interference based on his resisting (an unlawful) arrest.  Grote's actions went beyond mere failure to cooperate:  he "physically impede[d]" Hall's efforts to arrest him by locking himself in his car for a minute.[71]  The *Janes* case also provides support that Grote committed interference (since briefly barricading oneself in a car surely compares to

---

[69] No. 22-0748, 2023 WL 4104113, at *4-5 (Iowa Ct. App. June 21, 2023).  Officers ultimately "wrestled [defendant] to the ground," causing a broken "body camera mount" "[d]uring the tussle," but probable cause must have existed as soon as the officers effected force, since that is when defendant was seized (the Court of Appeals did not discuss the timing of the seizure, but neither did it appear to rely on the tussle in finding probable cause for interference).  *Id.* at *2, *5.

[70] No. 08-1454, 2009 WL 2185821, at *1, *3 (Iowa Ct. App. July 22, 2009) (distinguishing *Davis* because the officer's citation in that case was lawful, but the officer in *Buldhaupt* did not have "grounds for arresting [plaintiff] prior to entering the home").

[71] *Cf. Webster*, 41 F.4th at 1011.

26

backing away and trying to keep one's arms away from an officer's handcuffs)—although *Janes* could perhaps be distinguished since Grote eventually cooperated here (unlike the defendant in *Janes*). An officer could reasonably conclude that Grote hindered his arrest by placing an obstacle between Hall and his efforts to effect the arrest—namely, his locked vehicle. Although Grote ultimately cooperated, only delaying his arrest for a minute at most, it is not clear under Iowa caselaw that Grote's actions did not constitute interference.

An objective officer could have believed the facts sufficient to arrest Grote for interference with official acts based on his resisting arrest. I therefore find that Hall is entitled to qualified immunity on Grote's § 1983 claim for false arrest in violation of the Fourth Amendment.[72]

### 2. *Iowa Law False Arrest Claim*

The probable cause analysis for the state-law false arrest claim is largely the same as for the Fourth Amendment false arrest claim.[73] As with a Fourth Amendment claim, Iowa law analyzes probable cause for a false arrest claim objectively, and "an arrest can be sustained by probable cause for" a different offense than the one "the officer announced at the time of the arrest."[74]

> Iowa courts apply a "less demanding" probable cause standard to civil false
> arrest claims than when probable cause is challenged in a motion to suppress
> in a criminal case: "if the officer acts in good faith and

---

[72] *See United States v. Finley*, 56 F.4th 1159, 1162-63, 1166 (8th Cir. 2023) (holding irrelevant that law enforcement lacked probable cause to stop defendant when they surrounded his vehicle with weapons drawn and ordered him to put his hands up, since defendant fled rather than submit to their show of authority; and by the time of his apprehension, law enforcement had probable cause to arrest for crime of avoiding arrest, a crime officers did not subjectively intend to arrest him for).

[73] *See* **Iowa Code § 804.7** (peace officer may make warrantless arrests for "a public offense committed or attempted in the peace officer's presence").

[74] *Veatch*, 858 N.W.2d at 8.

with reasonable belief that a crime has been committed and the person arrested committed it, his actions are justified and liability does not attach." []"'Reasonable belief' in the false arrest context is a less demanding standard than traditional probable cause."[] In other words, courts must give an officer greater latitude when the officer is defending civil claims for false arrest than when the officer is part of prosecuting a criminal case against the arrestee.[75]

As discussed above, here, a jury could find Hall arrested Grote for disorderly conduct based on Grote insulting him with the F-word in a normal volume. This is not a reasonable application of Iowa law. But without considering Hall's subjective reason for making the arrest, an officer could reasonably believe there was probable cause to arrest Grote for interference with official acts based on him locking himself in his vehicle when Hall tried to arrest him. Accordingly, I find that Hall is entitled to summary judgment on Grote's false arrest claim.

### 3. First Amendment Retaliatory Arrest Claim

Grote asserts that his arrest for disorderly conduct "was specifically intended to interfere with Grote's First Amendment right to speak with and/or criticize La Porte City police officers" and "Hall manufactured false evidence against Grote in direct retaliation for Grote exercising his First Amendment Right to criticize and complain about police officer[s]." Doc. 1 at 12. "The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out."[76] To state a claim for a First Amendment retaliatory arrest, a plaintiff must allege: "(1) he engaged in a protected activity; (2) the defendant took an

---

[75] *Seaman v. City of Newton*, No. 4:23-cv-00512, 2025 WL 3539064, at *8 (S.D. Iowa Apr. 29, 2025) (citations omitted and cleaned up) (quoting *Children*, 331 N.W.2d at 680; *Fakorzi v. Dillard's Inc.*, 252 F. Supp. 2d 819, 833 n.1 (S.D. Iowa 2003)).

[76] *Graham v. Barnette*, 5 F.4th 872, 888 (8th Cir. 2021) (cleaned up) (quoting *Hoyland v. McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017), *abrogated on other grounds as recognized by Laney*, 56 F.4th at 1157 n.2.).

28

adverse action against him that would chill a person of ordinary firmness from continuing the activity; (3) his protected activity motivated, at least in part, the defendant to take the adverse action; and (4) the defendant lacked actual or arguable probable cause to arrest him."[77]

As noted above, viewing the facts in the light most favorable to Grote, he told Hall to get out of his way as he passed him and called him a "stupid fucking pig." Defendants argue (boldly) that Grote's speech was not protected because it constituted fighting words. As the Supreme Court has explained, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."[78] Protected speech can include profanity.[79] Indeed, the Eighth Circuit has stated that "[c]riticism of law enforcement officers, even with profanity, is protected speech."[80] Defendants attempt to evade this protection by arguing that Grote's statement constituted fighting words, which are not protected speech. Fighting words are "those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke a violent reaction."[81] "[T]he 'fighting words' doctrine may be more limited in the case of communications addressed to properly trained police officers because police officers are expected to exercise greater restraint in their response than the average citizen."[82]

---

[77] *Murphy v. Schmitt*, 143 F.4th 914, 918 (8th Cir. 2025).

[78] *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).

[79] *See, e.g.*, *Cohen v. California*, 403 U.S. 15, 16, 26 (1971) (holding that it was protected speech for a defendant to walk through courthouse corridor wearing jacket bearing the words "Fuck the Draft").

[80] *Thurairajah I*, 925 F.3d at 985.

[81] *Cohen,* 403 U.S. at 20.

[82] *Buffkins v. City of Omaha*, 922 F.2d 465, 472 (8th Cir. 1990) (citing *City of Houston*, 482 U.S. at 462).

29

Defendants rely on *McCormick v. City of Lawrence*, but in that case, the court specifically reasoned that the "plaintiffs were not only showing their disapproval of police activity, but also making repeated personal attacks on the officers" in a "verbal tirade" that "caused 'extreme alarm' in the officers."[83] This markedly contrasts with Grote's one-time statement to Hall as he traveled past him in the opposite direction. Numerous Eighth Circuit cases illustrate that criticizing police officers (even with profanity) is protected speech, not fighting words. In *Buffkins v. City of Omaha*, for example, the Eighth Circuit concluded an individual's reference to the arresting officers as "asshole[s]" was not within the category of "fighting words" excluded from protection of the First Amendment.[84] The Eighth Circuit found "no evidence that [plaintiff's] speech was an incitement to immediate lawless action[,]" particularly considering no one outside an interview room with two officers heard the comment.[85] In *Thurairajah I*, an individual driving past and shouting "f**k you" to police officers from fifty feet away was protected activity.[86] Here, Grote made a single insulting statement to a police officer in passing while he was headed in the opposite direction that did not constitute a threat.[87] In that context, Grote's words were not inherently likely to provoke a violent reaction. Indeed, Hall testified that Grote had repeatedly behaved in a similar manner on prior occasions

---

[83] 325 F. Supp. 2d 1191, 1197, 1201 (D. Kan. 2004). Defendants also rely on state court cases outside of Iowa that are at least twenty years old, and which are not binding on this court—especially in the face of conflicting Eighth Circuit precedent. Most of these cases can additionally be distinguished as involving shouting or repeated insults.

[84] 922 F.2d at 472.

[85] *Id*.

[86] 925 F.3d at 985.

[87] *Cf. **Williams v. Mikles***, No. 05-CV-2020, 2006 WL 778635, at *3 (W.D. Ark. Mar. 27, 2006) (finding plaintiff's speech was fighting words when, having observed injuries on another person, "[t]he Defendants were dealing with a person they believed had assaulted another and was directing profanity at them").

30

without evoking any hostile response from officers.  Thus, Grote's comment to Hall was protected speech.

Defendants next argue that Grote cannot establish the second prong, that Hall's conduct would chill others from engaging in similar speech.  This argument is clearly foreclosed by Eighth Circuit precedent and warrants little discussion.[88]  "[T]here can be little doubt that 'being arrested for exercising the right to free speech would chill a person of ordinary firmness from exercising that right in the future.'"[89]

Defendants also challenge whether Grote can establish that his speech motivated Hall to arrest him.  "To survive summary judgment, a plaintiff must show that a reasonable jury could find that a retaliatory motive of the government official was a 'but-for cause' of the adverse action, 'meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'"[90] As such, if the arrest "was driven not by 'animus' but by the defendant's understanding—however mistaken—of his official duties, then it was not 'retaliatory.'"[91]  "The causal connection is generally a jury question, but it can provide a basis for summary judgment when the 'question is so free from doubt as to justify taking it from the jury.'"[92]

Here, there is a genuine issue of material fact as to whether the causation element is present.  Hall's statements to Grote captured on video (such as "You said the F-word" and "You told me to go F myself, that's disorderly conduct") suggest that the content of Grote's speech to Hall led to his arrest.  A reasonable jury could find that Hall was

---

[88] *See Thurairajah I*, 925 F.3d at 985; *Hoyland*, 869 F.3d at 657.

[89] *Hoyland*, 869 F.3d at 657 (quoting *Clary v. City of Cape Girardeau*, 165 F. Supp. 3d 808, 826 (E.D. Mo. 2016)).

[90] *Graham*, 5 F.4th at 889 (quoting *Nieves*, 587 U.S. at 399).

[91] *Mitchell v. Kirchmeier*, 28 F.4th 888, 896 (8th Cir. 2022).

[92] *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (quoting *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002)).

motivated to arrest Grote because Grote called him a "stupid fucking pig."[93]  These facts do not establish a motive so free from doubt to warrant summary judgment.

For the fourth element of a retaliatory arrest claim, a plaintiff must plead and prove the absence of probable cause.[94]  Hall arrested and charged Grote with disorderly conduct, and as discussed above, considering the facts in the light most favorable to Grote, Hall lacked probable cause or arguable probable cause to arrest Grote for that offense.

Defendants argue that the existence of probable cause for an uncharged offense— resisting arrest—defeats Grote's First Amendment claim.  As discussed above, when analyzing a Fourth Amendment false arrest claim, the court considers the facts from the viewpoint of an objective officer, and therefore the existence of probable cause for *any* offense, even one not subjectively contemplated by the arresting officer, may render the arrest lawful.  Defendants cite no cases extending this principle to the First Amendment context.[95]  The purpose of requiring no probable cause for a retaliatory arrest claim is based on the complexities in proving a "causal connection between the defendant's alleged animus and the plaintiff's injury";[96] "a state of mind is 'easy to allege and hard to disprove.'"[97]  The absence of probable cause "generally provide[s] weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will

---

[93] *See Thurairajah I*, 925 F.3d at 985 (explaining that an officer's affidavit in support of the complaint suggested that "the arrest was motivated, at least in part, by the [First Amendment speech]").

[94] *Watson*, 119 F.4th at 551.

[95] *See Gomez v. Riccio*, No. 02 C 5911, 2005 WL 2978955, at *6 (N.D. Ill. Nov. 1, 2005) ("Defendants attempt to extend their *Devenpeck* argument regarding false arrest to this claim with no citation to authority whatsoever that *Devenpeck* extends to a First Amendment claim. We agree with plaintiff that whether the officers had probable cause to arrest plaintiff is not relevant to her allegations that defendants retaliated against her for having filed the *Harris* suit by fabricating evidence on the aggravated battery charges." (decided prior to *Nieves*)).

[96] *Nieves*, 587 U.S. at 401 (quoting *Reichle v. Howards*, 566 U.S. 658, 668 (2012)).

[97] *Id.* at 403 (quoting *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998)).

32

suggest the opposite."[98] This reasoning does not apply to offenses not contemplated by the arresting officer: the existence of arguable probable cause to arrest Grote for interference says nothing about Hall's subjective motives and animus; he did not intend to arrest Grote for interference, and this was instead an argument raised by his attorneys in this case. On the other hand, the lack of probable cause for disorderly conduct (the offense Hall considered) suggests that Hall arrested Grote based on his protected speech, rather than because Grote committed an offense.

In *Nieves*, the Supreme Court recognized a "narrow" exception to the requirement that a plaintiff prove lack of probable cause for a retaliatory arrest claim.[99] The Court reasoned that "where officers have probable cause to make arrests, but typically exercise their discretion not to do so," proof of probable cause would do "little to prove or disprove the causal connection between animus and injury."[100] Thus, the Court held that "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."[101] The Court provided the example of jaywalking, an offense that at many intersections "is endemic but rarely results in arrest," such that "[i]f an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection," the existence of probable cause for jaywalking should not defeat the First Amendment retaliatory arrest claim.[102]

The *Nieves* Court spoke in terms of "an objective inquiry."[103] But it is hard to imagine what kind of objective evidence Grote could have provided under the

---

[98] *Id.* at 402.

[99] *Id.* at 406.

[100] *Id.* at 407.

[101] *Id.*

[102] *Id.*

[103] *Id.* at 407.

33

circumstances—that other people are not arrested when an officer wrongly believes he has probable cause to arrest, and they briefly lock themselves in their car when the officer tries to arrest them? This test does not make sense with resisting arrest being the uncontemplated offense, because the officer is necessarily already trying to effect an arrest. The evidence in this particular case that a person would not normally be arrested for resisting arrest is that Hall did not arrest Grote for resisting arrest. Instead, Hall's reason for arresting Grote, as stated on his body camera footage, was Grote's protected speech. Under the circumstances, it is enough that Grote proves the lack of probable cause for the stated offense of arrest—disorderly conduct.

As the cases cited throughout demonstrate, it was clearly established in November 2023 that a person had a First Amendment right to criticize officers using profanity and that an officer could not arrest a person for exercising their right to free speech. As such, Hall is not entitled to qualified immunity on Grote's First Amendment claim based on his arrest for disorderly conduct.

### 4. *Iowa Malicious Prosecution Claim*

"A malicious prosecution is one that is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure."[104] In Iowa, "[t]he elements of a malicious prosecution claim are: (1) a previous prosecution, (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of the defendant for bringing the prosecution, and (6) damage to the plaintiff."[105] Grote brings a claim of

---

[104] *Venckus v. City of Iowa City*, 990 N.W.2d 800, 807-08 (Iowa 2023) (quoting *Liberty Loan Corp. of Des Moines v. Williams*, 201 N.W.2d 462, 465-66 (Iowa 1972)).

[105] *Whalen v. Connelly,* 621 N.W.2d 681, 687–88 (Iowa 2000) (en banc); *Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022).

34

malicious prosecution against Hall based on his filing a criminal complaint charging Grote with disorderly conduct.

Defendants argue Grote cannot prove Hall instigated the prosecution for disorderly conduct. Their cited cases are all distinguishable, and none involve a situation where the officer files the information or criminal complaint.[106] Under Iowa law, "peace officers who instigate or procure a prosecution may be held liable for malicious prosecution, other elements, including actual malice, being present."[107] Here, Hall instigated the criminal case by filing the criminal complaint. Accordingly, a reasonable juror could find for Grote on this element.

Defendants also argue the malicious prosecution claim fails because probable cause existed that Grote committed disorderly conduct under Iowa law. I have already found (in connection with Grote's Fourth Amendment claim) that a reasonable juror could find no probable cause for disorderly conduct under Iowa law. Defendants argue that the court should consider that alternative offenses for arrest existed, citing no caselaw. As a matter of common sense, for a malicious prosecution claim, what matters is whether probable cause existed for the charge being prosecuted.

Finally, Defendants argue Grote cannot prove malice. In an action against a public official such as a police officer, the plaintiff must make an "affirmative showing" that

---

[106] *Venckus*, 990 N.W.2d at 808, 811 (plaintiff acknowledged probable cause existed when charges were filed, but argued exculpatory evidence provided by defense counsel dissipated probable cause such that officer was liable for continuing malicious prosecution; court held the officer "did not . . . cause the prosecution to continue" because "[e]verything he knew, the prosecutors knew," and prosecutors rather than officer controlled whether to dismiss charges); *Lukecart v. Swift & Co.*, 130 N.W.2d 716, 721, 723-24 (Iowa 1964) (investigating detective did not file information but rather turned charging decision over to county attorney, who conducted independent investigation over forty-day period and presented case to grand jury, which issued indictment after hearing from ten witnesses); *Cheek v. ABC Beverage Mfrs., Inc.*, No. 05-1962, 2006 WL 2560890, at *3 (Iowa Ct. App. Sept. 6, 2006) (private party provided information to police).

[107] *Moser v. Black Hawk Cnty.*, 300 N.W.2d 150, 153 (Iowa 1981).

35

the defendant instigated criminal proceedings "primarily inspired by ill-will, hatred or other wrongful motives."[108] "If the defendant's purpose in instigating proceedings was otherwise proper, the fact he felt indignation or resentment toward the plaintiff will not subject him to liability."[109] Malice "cannot simply be inferred from a lack of probable cause."[110]

Defendants argue there is insufficient evidence Hall acted with malice. They appear to acknowledge that a false statement in a police report or complaint might support a finding of malice,[111] but they argue no such falsity exists here. As set forth above, viewing the facts in the light most favorable to Grote, Grote insulted Hall using a normal speaking voice and did not shout or yell. Yet Hall suggested in the criminal complaint that Grote yelled. In addition, Hall included in the criminal complaint that witnesses indicated Grote's "language and yelling" bothered them, but a reasonable juror could find that Hall only asked about Grote's language (based on the body camera footage and witness B.G.'s affidavit). Although whether a person "yell[ed]" could be "the kind of subjective observation[] about which reasonable minds could differ,"[112] since a necessary element of disorderly conduct is that Grote made "loud and raucous noise," the description here is material. In addition, whether Hall asked witnesses about Grote's

---

[108] *Vander Linden v. Crews*, 231 N.W.2d 904, 906 (Iowa 1975).

[109] *Id.*

[110] *Id.*

[111] *Cf. Venckus*, 990 N.W.2d at 812 (in granting summary judgment to officer, noting "[t]his is not a case where [the officer] knowingly provided false information to the prosecutors or knowingly withheld material information"); *see also Kalina v. Fletcher*, 522 U.S. 118, 133 (1997) (Scalia, J., concurring) (noting an officer's "false statements as a witness in support of the warrant application . . . might have been evidence of malice or initiation in the malicious prosecution suit" (emphasis omitted)).

[112] *Kushner v. Buhta*, No. 16-CV-2646, 2018 WL 1866033, at *16 (D. Minn. Apr. 18, 2018), *aff'd,* 771 F. App'x 714 (8th Cir. 2019); *see also Guidice v. Priest*, 604 F. App'x 560 (9th Cir. 2015) (in addressing defamation claim under California law, holding that "shouted" was a "subjective word[]" constituting an "opinion" and could not form the basis of defamation).

yelling or just his language is less open to interpretation.  A reasonable juror could find Hall included false statements in the criminal complaint to bolster his reasons for arresting Grote when Grote had exercised his free speech rights.

Genuine issues of material fact exist on Grote's common law malicious prosecution claim.  Thus, Defendants are not entitled to summary judgment on this claim.

### 5.  Due Process Claim

Grote makes a conclusory allegation of a due process violation against Hall as part of his § 1983 claim.  The complaint asserts that Hall "recklessly and knowingly omitted exculpatory evidence from his investigation and official reports."  Doc. 1 at 12.  He further alleges that "Hall swore out a criminal complaint against Grote for disorderly conduct without probable cause."  *Id.* at 11-12.  Defendants argue that Grote failed to present any facts to support this claim and that Defendants are entitled to qualified immunity.

Grote does not offer a specific resistance against dismissal of the due process claim but does argue generally that Hall falsely included the statement in the criminal complaint about yelling (discussed in the preceding section).  As noted in the section discussing Grote's other due process claim, a § 1983 claim based on false statements in the criminal complaint that ultimately results only in a pretrial deprivation of liberty is better addressed through Fourth Amendment principles than the notion of substantive due process.[113] Because the prosecutor dismissed the charges against Grote before trial, his due process claim fails, and Defendants are entitled to summary judgment.

### C.  Section 1983 Official Capacity Claims Against Husmann and Hall

Grote sued Husmann and Hall in both their individual and official capacities.

"[A] suit against a public official in his official capacity is actually a suit

---

[113] *See Johnson*, 942 F.3d at 410-11.

37

against the entity for which the public official is an agent." To impose Section 1983 liability on a local government body, a plaintiff must show that an official policy or widespread practice caused a deprivation of a constitutional right. "A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." To constitute a custom the alleged unconstitutional conduct must be "continuing, widespread, and persistent."[114]

Grote argues that a policy or custom existed based on Police Chief Brecher's deposition testimony. Brecher testified at his deposition that he had told his officers that "there's a gentleman. He'll drive around. He'll bust your chops a little bit, but he's all right. He'll talk with you." Pl. App. 22. Similarly, he stated that "[a]s a new officer, it could be potentially intimidating, and I wanted to give them a heads-up that there is somebody around that may kind of bust your chops a little bit, but [he]'ll talk with you." Pl. App 25. He further testified that he advised officers that he was told Grote "is bipolar and that his behavior ebbs and flows" with "an up-and-down behavior process." *Id.* Hall testified that, after he had had some interactions with Grote, Brecher told Hall "[j]ust to ignore [Grote]. If he's not committing any crimes, to just ignore it." Def. App. 124.

Grote argues that this testimony establishes that La Porte City had a policy to treat Grote differently because of his alleged mental health problems. But Brecher's testimony does not support that he instructed officers to treat Grote differently. Brecher did not set forth how to handle Grote, but rather, just warned officers that Grote could be up and down in his behavior but that he was overall okay. Moreover, testimony warning officers about the behavior of one resident cannot establish any sort of custom, widespread practice, or policy. These are insufficient allegations for any official capacity claim to proceed against Husmann or Hall. In addition, because Grote failed to establish a

---

[114] *Artisani v. Dubuque Cnty.*, No. 25-CV-1029, 2026 WL 252744, at *16 (N.D. Iowa Jan. 30, 2026) (citations omitted and cleaned up) (quoting *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006); *Hayes v. Faulkner Cnty.*, 388 F.3d 669, 674 (8th Cir. 2004); *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)).

38

violation of his constitutional rights with regard to Husmann, his official capacity claim against Husmann also fails for that reason.

Husmann and Hall are entitled to summary judgment on Grote's § 1983 claims against them in their official capacities.

### D. Punitive Damages

Grote requests punitive damages, but Defendants assert that such a claim should be dismissed as a matter of law. Grote agrees that La Porte City is immune from punitive damages.

Punitive damages are available for state common law claims under limited circumstances. Iowa Code § 670.12 provides that "[a]n officer or employee of a municipality is not liable for punitive damages as a result of acts in the performance of a duty, unless actual malice or willful, wanton and reckless misconduct is proven." Similarly, punitive damages are available in § 1983 suits when a reasonable juror could find that a defendant's conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[115] "A finding that an official violated a plaintiff's constitutional rights, 'while establishing liability under § 1983, does not necessitate a finding of callous indifference warranting punitive damages'[; t]he plaintiff must produce evidence that the defendant's conduct was 'sufficiently egregious to justify the imposition of punitive damages.'"[116]

> The purpose of awarding punitive damages to a plaintiff is "to punish the defendant for his or her willful or malicious conduct and to deter others from similar behavior." "The focus, in determining the propriety of punitive damages, is on the intent of the defendant, and whether the

---

[115] *Smith v. Wade*, 461 U.S. 30, 56 (1983).

[116] *Thurairajah v. City of Fort Smith (Thurairajah II)*, 3 F.4th 1017, 1027 (8th Cir. 2021) (quoting *Coleman v. Rahija*, 114 F.3d 778, 788 (8th Cir. 1997)).

defendant's conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards."[117]

In *Thurairajah II*, the Eighth Circuit held that plaintiff was not entitled to punitive damages on his retaliatory arrest claim under the First Amendment when the officer arrested plaintiff for yelling "f**k you" to the officer from his moving vehicle.[118] The court found insufficient evidence of egregiousness based on plaintiff's testimony that the officer was angry and sped him off to jail and that jailers told him he "was under arrest for saying 'f**k you' to a cop."[119] The court found the evidence instead established the officer acted "to prevent children from hearing expletives" rather than with reckless disregard to plaintiff's rights, since the officer had been performing a traffic stop when plaintiff yelled and the two young children in the stopped vehicle reacted by putting their hands over their mouths; the court also noted the officer told plaintiff he could not talk like that because "there could be kids out."[120]

Here, on the other hand, a jury could find based on Hall's statements on the body camera footage that he was motivated to arrest Grote based solely on Grote's foul, insulting language. In addition, as discussed in the malicious prosecution section, a genuine issue of material fact exists as to whether Hall included a false statement in the criminal complaint charging Grote with disorderly conduct, which additionally supports a finding that Hall acted with callous indifference to Grote's rights. Here, I find a jury question exists on whether Grote is entitled to punitive damages.

---

[117] *Id.* at 1026.

[118] *Id.* at 1022, 1027.

[119] *Id.* at 1027.

[120] *Id.*

40

### III. CONCLUSION

The court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment (Doc. 24). The court grants summary judgment to Defendants on Counts 1, 2, 3, part of 4, and 5: the § 1983, Iowa false arrest, and Iowa malicious prosecution claims against Husmann and the City; the § 1983 Fourth Amendment and due process claims against Hall, as well as the official-capacity claim; the Iowa false arrest claim against Hall and the City; and the punitive damages request against the City. The following claims still remain: Grote's § 1983 First Amendment claim against Hall in his individual capacity (part of Count 4), the Iowa malicious prosecution claim against Hall and the City (Count 6), and Grote's request for punitive damages against Hall.

**SO ORDERED** on May 22, 2026.

Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

41